UNITED STATES, Appellant

v.

EDWARD J. COLLIER, Private, U. S. Army, Appellee

1 USCMA 575, 5 CMR 3

No. 467

Decided August 12, 1952

LT. COL. Paul J. Leahy, USA, and CAPT. Irvin M. Kent, USA, for Appellant.

LT. COL. Stewart H. Legendre, USA, and 1ST LT. Bernard Landman, Jr., USA, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried by a general court-martial[1] for the offense of desertion. He was found guilty as charged and sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for two years. The sentence was approved by the convening authority, but the execution of the dishonorable discharge was ordered suspended until the release of the accused from confinement. A board of review in the office of The Judge Advocate General of the Army concluded that the findings of guilty and the sentence were incorrect in law and set them aside because of a finding that the accused's privilege against self incrimination was violated to his substantial prejudice. The Judge Advocate General of the Army certified the record of trial to this Court pursuant to Article 67 (b) (2), Uniform Code of Military Justice, 50 USC § 654. The issue, as phrased by him, is: Did the law officer's questioning of the accused relative to Prosecution's Exhibit 2 (stipulation) result in error fatal to the validity of the finding of guilty and the sentence?

The facts necessary to understand properly the issue involved are these: The evidence of the Government showed the inception of the unauthorized absence to have commenced on the 10th day of June, 1951. The method of termination was contained in a written stipulation signed by the accused, his counsel and the Government. The contents of this stipulation, which is the exhibit 2, are that if two agents of the Federal Bureau of Investigation were present in court they would testify that they apprehended the accused on October 29, 1951, at a given address in St. Louis, Missouri; and that at the time of his apprehension accused was wearing a Class A khaki uniform.

During the course of the trial the prosecution offered the stipulation into evidence, and defense announced that there was no objection. The law officer, apparently in an attempt to comply with certain provisions of the Manual for Courts-Martial, United States, 1951, which will be hereinafter referred to, asked the accused certain questions and received certain answers. These are quoted in haec verba:

"LAW OFFICER: Private Collier at the time you signed this instrument did you know the contents thereof? Did you know what was included?
ACCUSED: No, sir, I didn't.
LAW OFFICER: You did not?
ACCUSED: No, sir.
LAW OFFICER: Well, do you now agree that the matters and things contained in the stipulation being introduced in court are true?
ACCUSED: Yes, sir.
LAW OFFICER: Do you understand what is contained in the stipulation?
ACCUSED: Sir, everything on there is true on paper. I understood.
LAW OFFICER: Have you read it?
ACCUSED: Yes, sir.
LAW OFFICER: And you agree that everything in the stipulation is true?
ACCUSED: Yes, sir.
LAW OFFICER: The stipulation will be received in evidence and marked as requested."

The point in dispute is whether the colloquy between the law officer and the accused, without objection by him or his counsel, was in violation of Article 31 (a), 50 USC § 602, which provides that no person subject to the Code shall compel any person to answer any question the answer to which may tend to incriminate him.

The Manual for Courts-Martial, supra, par. 154b, provides for the use of stipulations and states that the general principle is as follows:

"The parties may make written or oral stipulations as to the existence or nonexistence of any fact. A stip-

---

[1] CM 349913.

ulation need not be accepted by the court and should not be accepted if any doubt exists as to the accused's understanding of what is involved."

A reading of the record suggests that the law officer was not seeking to compel the accused to testify against himself. Rather, he was interrogating him to determine his understanding of the nature and extent of the stipulation as required by the foregoing section. The law officer, undoubtedly, used an ill-chosen phrase when he asked if the contents of the stipulation were true, but the words used must be interpreted in the light of existing conditions. The background before, and the facts and circumstances attending, the incident must be considered in determining whether the answers were exacted by compulsion or coercion.

There is no contention made that the stipulation was not voluntarily entered into or that it contains any statement made by the accused. He took the witness stand in his own behalf, testified as to the facts and circumstances surrounding his absence and voluntarily corroborated most of the facts set forth in the stipulation. He had pleaded guilty to the included offense of absence without leave, and attempted to explain his reasons for not returning to the service. Included in the stipulation are two facts beneficial to the accused as they bolstered the explanation given. These were that he was apprehended at his home, which was consistent with his claim that he stayed there during the full period of absence to assist his father; and the second was that he was wearing a Class A uniform, which was indicative of the fact that he had not entirely severed his connection with the Army. The only element which was detrimental to him was the fact that he was apprehended, negating voluntary return, and this fact was not disputed. If, therefore, he was compelled to give evidence against himself it amounted to no more than an admission that he was apprehended.

The essence of the privilege protected by the Code is freedom from giving compulsory testimony. Neither the letter nor the spirit of the Uniform Code of Military Justice is violated unless the accused is compelled or coerced into giving evidence incriminating himself. Compulsion may be either physical or mental, but to establish a violation of the right against self incrimination the accused must show some act which denies him the right to free choice. We have searched the record in vain for any such happening. As previously stated, the major portion of the stipulation was beneficial to the accused and it may have been obtained at his solicitation. He joined in its admission and sought its benefits. He was protected by competent counsel. No claim of privilege was exercised. He was not sworn so as to be subject to punishment for contempt or false swearing. His counsel was afforded an opportunity to object to the admission in evidence of the stipulation. The accused, in answer to the first question, stated that he did not know the contents and the subsequent questions pursued an inquiry to determine whether at the time of trial he understood what was contained in the stipulation. He was not told he had to answer. He was not directed or importuned by the court or the law officer to commit himself. He was not in a situation where a person should or would, if properly advised, refuse to talk. The procedure was not adopted to seek any easy method of conviction, nor was it used as such. Taking into account the presence of counsel and the purposes and objectives of the inquiry, the proceedings lack any of the elements usually found in an inquisition. While we have unhesitatingly refused to affirm convictions where an undue advantage has been taken of an accused to obtain his testimony, we find nothing in this record which portrays these proceedings as anything but investigation into a collateral question of fact for the purpose of protecting the rights of the accused.

In the recent case of United States v. Welch (No. 196) 1 USCMA 402, 3 CMR 136, decided May 27, 1952, we dealt with the contention that an accused was required to incriminate himself. In that case we said:

". . . Nor did he advise peti-

tioner of the nature of the investigation or of the charges against him. This officer then conducted a searching and inquisitorial examination, utilizing all the devices of an expert prosecutor cross-examining a hostile witness, accompanied by shouting, accusations of falsehood, reprimands, and castigations of character. All these factors inevitably lead to the conclusion that petitioner was, in effect, compelled to incriminate himself. This smacks too much of Star Chamber proceedings. Petitioner did not have a free choice to admit or deny his guilt or to refuse to answer the questions asked."

The test laid down in that case is summarized in the statement that accused did not have the free choice to refuse to answer the questions asked. A contrary showing is made here. Both he and his counsel had a fair opportunity to raise any objection to the questions asked but they seemed quite content to get the stipulation into the record. While the proceedings were judicial and might cause the accused to believe he should respond to the questions this standing alone does not amount to compulsion. It is a fair assumption that had anyone directed the law officer's attention to the fact that his statements were couched in questionable language the questions would have been rephrased and the error, if any, corrected. Clearly, no one participating in the trial considered the inquiry compelled the accused to furnish evidence upon which a conviction could be based as the question was raised for the first time on appeal. We therefore hold that whatever error found its way into the record was not so flagrant as to deny to the accused the right granted to him by the Code.

For the foregoing reasons we hold that the board of review erred in reversing the cause on the grounds stated. The record is returned to The Judge Advocate General of the Army with directions to forward it to the board of review for action not inconsistent with this opinion.

Chief Judge QUINN concurs.

BROSMAN, Judge (concurring in the result):

I concur in the result. I do not concur fully because I have reservations concerning the approach of the majority opinion, and prefer to base my reversal of the board of review on different grounds.

In United States v. Welch (No. 196), 1 USCMA 402, 3 CMR 136, decided May 27, 1952, a majority of this Court made clear that its members deemed the privilege against self incrimination—a Constitutional right, made applicable in the military scene through the Uniform Code of Military Justice, Article 31, 50 USC § 602—to be a fundamentally important right. Here, the law officer, the "judge" in court-martial procedure, asked the accused if the matter contained in an offered stipulation as to the testimony of absent witnesses was in fact *true*. It matters not at all to me that a portion of the matter contained in the stipulation constituted evidence favorable to the accused. One of the facts contained therein was a statement that the accused—charged with desertion—was apprehended. It is familiar learning that, in such a case, this is evidence which weighs heavily against an accused. Especially is this true where, as here, the accused's theory of defense was that he had no intention permanently to abandon the service.

The Manual for Courts-Martial, United States, 1951, paragraph 150b, in interpreting Article 31, supra, uses the following language:

"The fifth amendment to the Constitution of the United States provides that in a criminal case no person shall be compelled 'to be a witness against himself.' The principle embodied in this provision applies to trials by courts-martial. . . . Also, Article 31a provides that no person subject to the code shall compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him."

The Manual, supra, goes on to say that the privilege is personal and must

be asserted by the individual concerned. However, it is also provided that ". . . the court should advise an apparently uninformed witness of his right to decline to make any answer which might tend to incriminate him." This latter rule certainly applies to the accused in this case. The Manual, supra, additionally states, at page 516, that "Unless there is an affirmative showing of record that the accused understands his rights as a witness, the court should assure itself through the LO (president of a special court-martial) by questions addressed directly to the accused that he understands his rights."

It is clear, from this record, that the law officer—however worthy his purpose—asked the accused an incriminating question without advising him of his right to refuse to answer. See the Uniform Code, supra, Article 31(b). It is also obvious that the accused was unaware of his position in this respect. It is idle to say that there is no coercion involved in a situation such as this. Here we have an accused who is on trial for an extremely serious offense. The law officer—his superior officer—is looked upon by the accused with an admixture of respect and fear. The accused will naturally assume that none but proper questions will be addressed to him, and that he must respond to all inquiries put to him by the law officer. This is particularly true in a military court-martial setting, as distinguished from a similar one in the civilian area. It is recognized, of course, that the accused here was not on the stand and under oath at the time he was questioned concerning the stipulation. Consequently from the point of view of strictest technicality, he may not have responded as the result of testimonial compulsion. However, the effect of his reply was in every practical way as damaging as if he had been sworn, and I am unwilling to distinguish between the two situations for the present purpose.

The privilege here involved is basic to sound concepts of American criminal justice. It is not necessary that a violation of the privilege be "flagrant" in order to require reversal, and in the usual case any violation would require prompt reversal. It is evident from the record that the law officer did not follow the specific procedures provided by the Code and the Manual. This was clear error. It requires no extended discussion to demonstrate that the direct product of this error—an explicit admission by the accused of the damaging fact of apprehension—would, under other circumstances, have resulted in substantial prejudice to him in the court-martial's findings of guilty of desertion.

However, it appears that the accused subsequently, of his own volition, took the stand as a witness in his own defense. He thereby waived his privilege against self incrimination with respect to all matters relevant to the offense of which he was then charged. The Manual for Courts-Martial, supra, paragraph 149b(1); Raffel v. United States, 271 US 494, 70 L ed 1054, 46 S Ct 566; United States ex rel. Rennie v. Brooks, 284 Fed 908. Where—as here, and under these particular circumstances—nothing indicates that the assumption of the stand by the accused was due to the earlier incriminatory admission improperly elicited from him, the error must be regarded as vitiated.

Accordingly, I concur in the view that the decision of the board of review must be reversed.