UNITED STATES, Appellee

v.

NEHEMIAH WILLIAMS, Private First Class, U. S. Air Force, Appellant

2 USCMA 430, 9 CMR 60

No. 1212

Decided May 1, 1953

Col Kenneth B. Chase, USAF, and Capt Daniel O'Leary, USAF, for Appellant.

Col David D. Porter, USAF, Col Wendell C. Dreier, USAF, and Maj William E. Shannon, USAF, for Appellee.

## Opinion of the Court

Robert E. Quinn, Chief Judge:

The accused was convicted by general court-martial in California of unlawful entry and larceny of $215.05 in violation of Articles 130 and 121 of the Uniform Code of Military Justice, 50 USC §§ 724 and 715, respectively. He was sentenced to dishonorable discharge, total forfeiture of pay and confinement for eighteen months. The findings and sentence have been upheld by Air Force reviewing authorities. We granted the accused's petition for review limited to issues concerning the admissibility of a pretrial confession and the legality of a conference held between the law officer and the court outside the presence of the accused and his counsel. In view of our action on the first issue, it becomes unnecessary to consider the second.

The evidence shows that the accused was on duty at the Officers' Mess during the day of December 6, 1951. That evening, the mess steward counted the day's cash receipts, a total of $215.05, and placed the money in a strongbox in a cabinet in the storeroom. When the mess was closed, all doors were locked and no one was left in the building. The next morning, when the mess sergeant opened the building, he found that the hasp on the cabinet containing the strongbox was broken. The strongbox was lying on the floor, pried open. The money was missing. Investigation of the premises revealed that an outside screen on one of the windows was torn open. A fingerprint of the accused was found on the bottom of the screen. In a pretrial confession, the accused admitted breaking and entering the mess building and taking the money.

At the trial, defense counsel objected to the admission of the confession in evidence, and a protracted hearing concerning the circumstances surrounding the taking of the confession was held. It is claimed by defense that this hearing discloses that the accused was not warned as required by Article 31 of the Code, 50 USC § 602, and that the resulting confession was, therefore, inadmissible. This contention requires that we set out in some detail defense counsel's examination of the agent who procured the confession:

"Q. Did you raise your voice?

A. Yes, I did.

Q. Getting a little perturbed because he didn't make a statement?

A. No, sir.

Q. Isn't it a fact that during this interrogation the accused constantly declined to make a statement until the very end?

A. Yes, sir.

Q. What did you do when the accused said he did not desire to make a statement?

A. I asked on what grounds did he refuse.

Q. Having previously warned him under the 31st Article of his rights, you knew the grounds, did you not?

A. No, sir.

Q. Well, you warned the accused that he could remain silent, did you not?

A. Not remain silent—that if the

**431**

answers would tend to incriminate or degrade him, he was not compelled to answer.

Q. Did you warn the accused that he could remain silent with respect to this offense?

A. Yes, if the answers would tend to incriminate or degrade him.

Q. But you told him he could not remain silent, is that right?

A. No.

Q. Well, what do you mean?

A. He kept telling me he had nothing to do with it and I told him, 'In that case you have no grounds for not answering the questions.' [R 41, 42]

. . . . . .

Q. Mr. Dalton, in explaining the rights of the accused under Article 31, was your explanation such that he did not have to answer questions that would tend to incriminate or degrade him, but that he would have to answer other questions?

A. I told the accused that he and I both were subject to military law, and after explaining the Article I told him, 'If you are guilty of this offense or if any answer you will give me will tend to incriminate or degrade you, you are not compelled to answer', but all other questions which would aid the solution of the crime and clarify the investigation he was obligated, as a member of the military service, to give testimony where it would not tend to incriminate or degrade him.

Q. And, in your experience as an OSI agent, is that the customary explanation given to all witnesses in investigations?

A. Yes, sir, it is.

Q. Did the accused ask you any questions about his rights under Article 31?

A. We discussed it at considerable length on the 7th and 18th of December, both.

Q. In your discussion, did his questions and answers indicate that he understood his rights?

A. Yes, I asked the accused, as well as other witnesses, if they understood the Article and if they signified they did, I asked, 'What does the Article mean, then?' and they gave me an explanation which I was satisfied with or I explained it further. [R 42, 43]

. . . . . .

Q. Do you still feel that the accused did not have the right to remain silent during your investigation over there?

A. If he were guilty, I felt he had the right. If he were innocent, I felt he did not." [R 43]

Defense claims, based on this testimony, that the agent violated Article 31, supra, by informing the accused that he had a right to remain silent only if he were guilty.

Article 31(b) of the Code, supra, states as follows:

"No person subject to this code shall interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial."

It is immediately apparent that this Article, read literally, confers rights far beyond those normally granted by the privilege against self incrimination. That privilege, as ordinarily interpreted, grants only a right to refuse to answer those questions which would incriminate the person interrogated. Article 31(b) provides that the accused or person suspected need make no statement concerning the offense. The interrogator is required to inform the accused (1) of the nature of the accusation; (2) that he need not make *any* statement regarding the offense; and (3) that any statement made by him may be used as evidence against him at a subsequent trial. It is patent, from that portion of the record set out supra, that the agent deliberately and intentionally informed the accused that he did not have a right to refuse to make any statement regarding the offense. This flies directly in the face of the express language of Article 31(b).

We are not disposed to adopt the view contended for by the Government that Article 31(b) should be interpreted to

432

require only the normal self-incriminal warning—that the suspect can refuse to answer only those questions which are incriminating. The decision to grant protection beyond that normally afforded by the privilege against self incrimination is basically one of policy and has already been made by Congress. It is not within our province to disregard the plain language of the Article in question in order to give it a more restrictive interpretation.

We should perhaps make it quite clear that we are not deciding whether the confession in question is voluntary or involuntary. In every military confession, there must be two inquiries. First, was the accused properly warned, and second, was the confession obtained as a result of coercion, unlawful influence, or unlawful inducement? The confession must be excluded from evidence, according to the plain language of Article 31(d), if either of those proscriptions is violated:

"No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement shall be received in evidence against him in a trial by court-martial."

The accused was not warned as required by Article 31—in point of fact, he was warned in explicit violation of the terms of that Article. Therefore, it was error to receive the resulting confession in evidence. Article 31(d), supra. We may note that we have previously held a violation of those warning requirements of the Code to be so important, policywise, as to cause invocation of the doctrine of general prejudice, thereby rendering unnecessary an inquiry as to whether improper consideration of the confession was specifically prejudicial to the accused's substantial rights. United States v. Wilson and Harvey (No. 647), 8 CMR 48, decided February 23, 1953. However, in the instant case specific prejudice is apparent. Apart from the evidence of the accused's confession, independent evidence indicated that the accused's fingerprints were found on the broken window screen of the building allegedly entered; on the night of the theft the accused counted the contents of a bag of money in the presence, and left a second bag in the care, of a friend. Since the accused was employed in the building during regular hours the fingerprint evidence was of doubtful significance. Furthermore, while his possession of two bags of money, otherwise unidentified, coupled with the fingerprint evidence is sufficient to sustain a finding of guilty, it certainly cannot be considered of sufficient probative value to compel such a finding. With evidence of a complete confession of guilt before them, the court-martial could not have found any ambiguity in the other evidence. Under the circumstances these evidentiary facts point solely to guilt. Only in a rehearing may the independent evidence of guilt be viewed in its true perspective. The decision of the board of review is reversed and a rehearing is ordered.

Judges LATIMER and BROSMAN concur.