UNITED STATES, Appellant

v.

EUGENE TROJANOWSKI, Private E–2, U. S. Army, Appellee

5 USCMA 305, 17 CMR 305

306

No. 4688

Decided December 23, 1954

Lt Col Thomas J. Newton, U. S. Army, Lt Col William R. Ward, U. S. Army, Lt Col Charles M. Munnecke, U. S. Army, and 1st Lt Roderick V. Brown, U. S. Army, for Appellant.

Lt Col Herman P. Goebel, Jr., U. S. Army, Lt Col George M. Thorpe, U. S. Army, Lt Col James C. Hamilton, U. S. Army, and Capt Frank C. Stetson, U. S. Army, for Appellee.

## Opinion of the Court

George W. Latimer, Judge:

### I

The accused was charged with larceny of personal property in violation of Article 121, Uniform Code of Military Justice, 50 USC § 715. The specification alleged that he had stolen a wallet containing $81.00, the property of one Private Coyman. The court-martial found him guilty of the offense but, by exceptions and substitutions, the value of the property taken was reduced from the amount of $81.00 to "over $50.00." He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for two years. When the convening authority acted on the record, he reduced the value of the property stolen to $35.00 and approved only so much of the sentence as provided for dishonorable discharge, total forfeitures, and confinement at hard labor for one year.

A board of review in the office of The Judge Advocate General of the Army held that an incriminatory admission by the accused was inadmissible in evidence over his objection since it was coerced by acts of the victim. The board concluded that the error in admitting the statement denied the accused due process of law and that, notwithstanding other compelling evidence in the record, including a judicial confession by the accused, a rehearing must be ordered. The Judge Advocate General of the Army then certified the case to this Court and requested that we answer the two following questions: (1) Did the law officer err in admitting the statements the accused made to Private Coyman? and (2) Was the action of the board of review in setting aside the findings and sentence correct in view of Article 59 (a) of the Code, 50 USC § 646?

Chronologically, the facts and circumstances giving rise to this controversy

**307**

are these: On September 18, 1953, prior to retiring for the night, Private Coyman, who occupied a bunk next to that of the accused, placed his wallet in his trousers and hung them on the wall. The following morning he discovered his wallet was missing. He was not certain as to the exact amount of money contained in the wallet, but he knew it to be at least $60.00 and possibly as much as $81.00. Two days later the accused acknowledged stealing the money and he returned $35.00 of the stolen funds to the victim. The foregoing testimony was given by the victim and admitted without objection by defense counsel, but a subsequent disclosure during the course of the trial raised doubts about the admissibility of the evidence showing a return of the money and the admissions made by accused contemporaneously therewith.

The question of admissibility arose in the following manner: After direct and cross-examination had been completed and while being examined by a member of the court, Coyman testified that just before the $35.00 was returned to him, he had engaged the accused in conversation and inquired about his wallet; that the accused denied having taken it; that he then slapped the accused twice, striking him with his open hand; that the accused started to cry and offered his wallet for examination, but the witness declined this offer; that after about five minutes the accused pulled out his wallet, extracted some money which had been concealed behind a photograph, and handed the $35.00 to the witness; and that as he returned the money, accused stated that the sum he was returning was part of the money taken and that he had thrown the wallet away. At this point, defense counsel objected to the testimony, setting out two grounds for inadmissibility: (1) that the accused was compelled to incriminate himself, and (2) that the witness had failed to warn the accused of his rights under Article 31(b) of the Code, 50 USC § 602, before he asked any questions. The law officer overruled the objection; and while the appropriate method of reaching the alleged error would have been a motion to strike the testimony, we will not concern ourselves with the irregularity.

The next witness who testified to matters of importance to this question was Lieutenant Fant. He testified that on October 2, 1953, some two weeks after the theft, he had an interview with the accused; that at that time he read and explained Article 31 of the Code to the accused and the latter acknowledged he understood the rights granted to him by that Article; that the accused admitted stealing the money; that the reason he assigned for doing so was that he had borrowed money and his creditors were pressing him for payment; that threats, force, coercion, or compulsion were not used by the Lieutenant to obtain the statements from the accused; and that the accused was not promised any leniency or immunity to induce him to admit his connection with the offense.

The defense counsel sought to exclude the testimony of the Lieutenant on the grounds that it was the product of the illegal confession earlier obtained; and that the Lieutenant, in advising the accused of his rights, neglected to inform him that the admissions previously made to the victim could not be used against him. The law officer again ruled against the accused. However, in explaining his rulings on the admissibility of the various statements, he specifically instructed the court that his ruling was not conclusive as to the voluntary nature of the admissions, but was final on admissibility only; that it merely placed the statements before the court; and that each member of the court could come to his own conclusion as to their voluntary nature and accept or reject them accordingly.

After completion of the Government's case, the accused testified in his own behalf and judicially admitted that he had taken $35.00 in military payment certificates from Coyman to pay off his debts; that he took the wallet early in the morning; that he counted the money shortly thereafter; that he was positive it contained only $35.00; that he subsequently threw the wallet away; and that he intended to return the money to the victim within four or five days.

308

## II

The first certified question will not cause us to tarry long. Because of the finding of the board of review that Coyman's testimony was inadmissible under Article 31(d) of the Code, we shall, for the purposes of this question, disregard the finding of the law officer, and possibly the court-martial, and assume that the slapping was sufficient coercion to render the incriminatory admission involuntary. We have previously accepted such a finding made by a board of review. In United States v. Hernandez, 4 USCMA 465, 16 CMR 39, we stated:

"The board of review specifically determined, as a fact, that the accused did not understand his rights under Article 31 at the time the statement was taken from him. Since there is substantial evidence to support this finding by the board of review, it is binding upon this Court. See United States v. Wilcher, 4 USCMA 215, 15 CMR 215; United States v. Josey, 3 USCMA 767, 14 CMR 185; United States v. Sell, 3 USCMA 202, 11 CMR 202."

Furthermore, we brush aside any and all procedural irregularities which have been called to our attention to reach the important question of whether we test this particular type of error for its prejudicial impact on the court-martial members.

By accepting the board's finding of compulsion, we bring into materiality sections (a), (b), and (d) of Article 31 of the Code, as it is admitted that Coyman failed to warn the accused before he received the money and heard the statement of guilt. That Article provides:

"(a) No person subject to this code shall compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him.

"(b) No person subject to this code shall interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

"(c) No person subject to this code shall compel any person to make a statement or produce evidence before any military tribunal if the statement or evidence is not material to the issue and may tend to degrade him.

"(d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement shall be received in evidence against him in a trial by court-martial."

Counsel for the accused contend that the evidence should have been barred by two grounds of inadmissibility, namely, compulsion as encompassed in section (a) of Article 31, and the failure to give the warning required by section (b). We find otherwise. While we were not required to inquire as to possible violations of both sections, in United States v. Williams, 2 USCMA 430, 9 CMR 60, we made it quite clear that a violation of either would require exclusion. In that case we stated:

"We should perhaps make it quite clear that we are not deciding whether the confession in question is voluntary or involuntary. In every military confession, there must be two inquiries. First, was the accused properly warned, the second, was the confession obtained as a result of coercion, unlawful influence, or unlawful inducement? The confession must be excluded from evidence, according to the plain language of Article 31(d), if either of those proscriptions is violated: . . ."

It matters little to the ultimate conclusion that we reach, but we find only a violation of the first section. When that provision is interpreted with section (d), it becomes crystal clear that a coerced statement is not to be received in evidence. Accepting, as we do, the

**309**

board of review's holding that the accused was compelled to talk, the admission of the testimony was contrary to the provisions against compulsory self-incrimination, and consequently error was committed. As to the statement being barred because of a violation of section (b), a different result is reached. We have previously held that inadmissibility based on failure to warn is applicable only to statements made by an accused, or one suspected of an offense, during the course of an investigation being conducted with some color of officiality. See United States v. Gibson, 3 USCMA 746, 14 CMR 164; United States v. Josey, 3 USCMA 767, 14 CMR 185, and cf. United States v. Wilson, 2 USCMA 248, 8 CMR 48. In the instant case, the victim acted solely for his own benefit and without official sanction. Under those circumstances any pretext of officiality is missing and a warning is not demanded. Therefore, error in the admission of the testimony cannot be predicated upon a failure of the victim to give a warning. However, because of our holding that the admission of the testimony was error because it was obtained by coercive measures, the first certified question must be answered affirmatively.

### III

The board of review concluded that the error in admitting the testimony of Private Coyman required a reversal because of the inapplicability of Article 59 (a) of the Code to cases which are supported by evidence obtained from an accused through compulsion. It based its conclusion for reversal upon the decision of another army board of review in United States v. Branch [CM 362110], 10 CMR 417, and the other cases cited therein. In that case, the victim of a larceny was permitted to testify at the court-martial as to certain admissions made by the accused as the result of physical violence employed to force him to confess. There, the board of review, in discussing the prejudicial effect of the error, cited two decisions by this Court in cases in which statements made without warning to the accused

had been received in evidence. (United States v. Williams, 2 USCMA 430, 9 CMR 60, and United States v. Wilson, 2 USCMA 248, 8 CMR 48.) These cases, however, deal with a concept which is inapplicable in this factual setting. After quoting from those opinions, the board of review had this to say regarding the applicability of the compelling evidence rule to cases involving the use of a statement obtained by coercion:

"However, the compelling evidence rule reflected by the 'old service view' referred to was limited to cases not involving coercion or duress. So, in CM 329162, Sliger, et al., 77 BR 361, 7 Bull JAG 13, the board of review stated:

'It necessarily follows therefore that the erroneous admission in evidence in a trial by court-martial of a confession which is obtained through coercion or duress violates the express provisions of the 24th Article of War, is highly prejudicial to the substantial rights of the accused and that the *findings of guilty in such a case cannot be sustained regardless of the other evidence in the record, clear and uncontradicted though* it may be.' (Italics supplied) (At p 367)

"The view thus expressed in Sliger, supra, is fully supported in the enunciations of the United States Supreme Court (Brown v. Allen, 344 US 443, 97 L ed 469, 73 S Ct 397, 437, decided 9 February 1953; Stroble v. California, 343 US 181, 96 L ed 872, 72 S Ct 599 (1952); Lyons v. Oklahoma, 322 US 596, 597, 88 L ed 1481, 64 S Ct 1208 (1944); Kotteakos et al. v. United States, 328 US 750, 764, 90 L ed 1557, 66 S Ct 1239 (1946); Malinski v. New York, 324 US 401, 420, 89 L ed 1029, 65 S St 781 (1945); Bram v. United States, 168 US 532, 540–552, 42 L ed 568, 18 S Ct 183 (1897); Lee v. Mississippi, 332 US 742, 92 L ed 330, 68 S Ct 300 (1947); Haley v. Ohio, 332 US 596, 92 L ed 224, 68 S Ct 302 (1948)); and further discussion thereof is deemed unnecessary."

We have no disposition to disagree

with the results in the Branch case, or with the general principles therein announced or advocated in the cited cases. In that instance, there was a genuine dispute over the identity of the person who stole the wallet. The accused denied he was the perpetrator of the offense. His denial of guilt from the witness stand was seriously damaged by a confession which wrapped a cloak of guilt around him. In that situation an incriminatory statement would have a lasting impact on the members of the court, and it alone might be instrumental in bringing about a finding of guilt. Conceding there may have been other evidence of sufficient quality and quantity to support a finding in that instance, prejudice was present because incompetent evidence improperly in the record offered strength to that which was uncertain and barely sufficient. In this instance, for reasons which will be hereinafter argued more fully, we are faced with an entirely different proposition.

We have examined all the civilian authorities cited in the Branch opinion, and find that in each instance the admission or confession was not only the pillar of support for the findings of guilt, but it was obtained from the defendant by public officials whose primary interest in the case was to fix responsibility on someone. In every case brutal, inhuman, illegal, or abusive measures were used to sweat out a statement of guilt. A careful analysis of the cases satisfies us that the Supreme Court, by refusing to measure the sufficiency of the evidence to sustain a verdict, aliunde the admission or confession, must have been guided by either or both of two principles: First, that the incriminating evidence had an adverse and measurable impact on a jury; second, to avoid a tyrannical sovereignty from crushing out the life or liberty of one at the mercy of public officials, it was necessary to curb their practice of trampling on the constitutional or statutory rights of those suspected of committing a crime. We shall first determine whether this case should be decided on the latter concept.

As we interpret the Supreme Court decisions which might be considered as precedents for this particular principle, we find a resolute and firm determination to remove the inducement for public officials to resort to third degree methods to obtain evidence from the lips of an accused. We refer to a few of the cases to show the extent and limits of the principles involved. In Lisenba v. California, 314 US 219, 62 S Ct 280, 86 L ed 166, that Court upheld the findings of a jury and of the Supreme Court of California to the effect that a confession was voluntary. However, it had this to say regarding the tactics employed by the officers who obtained the confession:

"Like the Supreme Court of California, we disapprove the violations of law involved in the treatment of the petitioner, and we think it right to add that where a prisoner held incommunicado is subjected to questioning by officers for long periods, and deprived of the advice of counsel, we shall scrutinize the record with care to determine whether, by the use of his confession, he is deprived of liberty or life through tyrannical or oppressive means. Officers of the law must realize that if they indulge in such practices they may, in the end, defeat rather than further the ends of justice. Their lawless practices here took them close to the line."

In Ashcraft v. Tennessee, 322 US 143, 64 S Ct 921, 88 L ed 1192, the Supreme Court reversed a conviction of the state court because it was based principally on a coerced confession. In that case, officials of the State of Tennessee used methods to obtain a confession which the court held to be so inherently coercive as to deny the defendant any semblance of a fair trial. Implicit in that decision may be found the rule of the Supreme Court that reversal will be employed, if necessary, to protect the constitutional guarantees of an individual against a despotic and unrestrained sovereignty. There the Court stated:

"The Constitution of the United States stands as a bar against the conviction of any individual in an American court by means of a coerced

confession. There have been, and are now, certain foreign nations with governments dedicated to an opposite policy: governments which convict individuals with testimony obtained by police organizations possessed of an unrestrained power to seize persons suspected of crimes against the state, hold them in secret custody, and wring from them confessions by physical or mental torture. So long as the Constitution remains the basic law of our Republic, America will not have that kind of government."

Again, in Haley v. Ohio, 332 US 596, 68 S Ct 302, 92 L ed 224, a similar principle was expounded. There a fifteen-year-old negro boy, after five hours of interrogation by police officers, confessed to having committed a murder. The admission of his statement into evidence was held to be a denial of due process of law because of the unbridled coercive measures used to obtain it. The majority of the Court reversed the conviction, and we sense in their opinion a refusal to let the state take advantage of the wrongs of its police officials. Mr. Justice Frankfurter, in a concurring opinion, joined the majority and concluded that the statement was involuntary because of the isolated detention and the secret, persistent, and long-continued interrogation. He stated that to remove the inducement to resort to cruel, unusual, or coercive methods, the Supreme Court had repeatedly denied to the States the right to use the fruits of such elicit methods.

Many cases of similar import could be cited, but our attention has not been called to any civilian case which holds that reversal must be ordered merely because a statement was obtained improperly by an individual acting in his private capacity. For obvious reasons, we do not condone the act of the victim in this case, but we cannot measure his conduct by the same yardstick we might use on officials conducting an inquiry on behalf of a state to fix blame. Here, the victim had a legitimate reason to seek recovery of his property, and the force was used primarily to recoupe his losses. As a matter of fact, he was not seeking to prosecute, he was

willing to avoid it. His was not a barbaric scheme coldly calculated and deliberately carried out to obtain evidence for a conviction. Whatever evidence was elicited was purely collateral to recovering the stolen property. In the recent case of United States v. Volante, 4 USCMA 689, 16 CMR 263, we had occasion to consider the admissibility of evidence obtained as a result of an unreasonable search and seizure made by persons acting privately. We there held that evidence seized during such a search was admissible, and we refused to handicap the Government by denying it the right to use the fruits of the venture. In applying a somewhat similar principle to confessions and admissions obtained by a private citizen, we believe the law requires that if they are coerced we cannot approve their use; but the extreme act of reversing a conviction, if one is admitted in evidence, to stamp out a vicious practice by public officials is not necessary. We are willing to deny the Government the right to capitalize on the wrongdoings of public officials, but we see no good reason to saddle it with the transgressions of private citizens who are acting solely for personal benefit. To go that far might prevent the use of relevant evidence uncovered by one while legally seeking to prevent the loss of his property. There may be times when a summary reversal is appropriate, but we believe logic and common sense dictate that, in the background of this case, we should test the error in the admission of the incompetent statements to determine their prejudicial effect on the court rather than to toss out the prosecution for disciplinary purposes. We are convinced that the accused has not been denied due process of law. If, when the proceedings are considered in their entirety, the error could not possibly have influenced either the finding or sentence in any degree detrimental to him, they should be affirmed.

A reference to the testimony offered by the accused, and to the tactics of defense employed by his counsel, will establish no prejudice. After the victim had testified for the Government,

312

he was recalled by defense counsel and, upon examination, repeated and enlarged upon his former testimony. Here it was needed by defense counsel to establish his contention that the slapping administered by Coyman carried over and coerced the confession given two weeks later to Lieutenant Fant. For such a purpose, it was admissible; but its voluntary re-introduction by the accused to assist him in establishing his theory on defense bars any contention that it was error to have the court-martial hear it.

However, more than that, the accused took the stand and testified in his own behalf. He admitted taking the wallet and related the circumstances under which he returned the $35.00 to the victim. He did not assert that Coyman's abusive treatment coerced him to talk or act; on the contrary, he sought to impress upon the court that he voluntarily returned all the money he had originally misappropriated. His defense strategy was to establish that he had taken the money to pay demanding creditors; that the amount converted was only $35.00; that he intended to pay it back; that he never used the money for the purpose for which it was taken; and that he returned it to Coyman within a few days. In the light of those circumstances, we find no law or reason supporting the accused's contention that he was denied due process of law because he was forced to incriminate himself. Fundamental as that right is, it is subject to being waived; and we have previously held that if an accused judicially admits his guilt of an offense by voluntarily testifying on the witness stand to facts which otherwise might not have been admissible, he cannot complain that he has been unjustly dealt with. United States v. Collier, 1 USCMA 575, 5 CMR 3.

In so far as is consistent with the Code and military necessities, we attempt to follow the principles announced by the Supreme Court of the United States. In reaching our result in this case, we do not believe we have departed from the principles announced in the cases we have considered. True, general statements are found in many opinions to the effect that if a coerced confession is used, the court will not assess the remaining evidence to determine whether it is sufficient to sustain a conviction. However, when consideration is given to the facts of the particular case with which the court was dealing, two factors which compel a reversal stand out prominently. First, the means employed by the public officials to obtain the confession horrify the ordinary citizen. Second, the confession when introduced into evidence had a compelling impact of guilt on minds of the jurors. It is to be remembered that confessions are one of the highest forms of proof and, in the usual case, they make positive and certain what otherwise might be less convincing. Of necessity when they have that effect, they become highly prejudicial to one on trial, and it takes little imagination to assess their damaging effect regardless of other evidence. Here, however, the accused, while on the witness stand, removed all questions of doubt; and had there been any uncertainty before his judicial confession, thereafter there was none. In addition, this case does not present us with a deliberate attempt by a tyrannical state or Federal Government to apply the rack and screw method or with incompetent evidence which influences, in any manner, or in any degree, the findings returned.

For those reasons, we reverse the board of review.

BROSMAN, Judge (concurring):

Judge Latimer's distinction between a coerced statement obtained by a public official, and one secured —as here—by a private citizen, is entirely valid in my view. If admitted in evidence, the former will normally require reversal regardless of compelling evidence of guilt. The latter does not demand such strong medicine.

Furthermore, although a public official is involved, a judicial confession of guilt will obviate the need for reversal—according to the clear purport of United States v. Morris, 4 USCMA 209, 15 CMR 209. Here the accused

was convicted of larceny. According to the summary of his testimony, as set out in the principal opinion, the accused admitted that he had taken $35.00 from the victim for the purpose of discharging certain pressing obligations of his own—although he asserted that he intended to repay the victim at some future time. This testimony constituted a judicial confession of larceny within the meaning of United States v. Krawczyk, 4 USCMA 255, 15 CMR 255.

QUINN, Chief Judge (concurring in the result):

I concur in the result. Many cogent reasons may be advanced against the conclusion that Article 31 ▄▄▄▄▄ ▄ of the Uniform Code permits a distinction between a confession forced from an accused by a private person, and one extorted from him by a person acting on behalf of the Government.

However, I need not consider that question in this case. Here the accused judicially admitted his guilt in his testimony at the trial. Such an admission precludes raising on appeal any claim of error alleging violation of his rights under Article 31. See United States v. Hatchett, 2 USCMA 482, 9 CMR 112.