UNITED STATES, Appellee

v

THOMAS W. WALKER, Specialist Third Class, U. S. Army, Appellant

9 USCMA 187, 25 CMR 449

No. 10,562

Decided April 18, 1958

First Lieutenant *William H. Carpenter* argued the cause for Appellant, Accused. With him on the brief was *Major Edward Fenig.*

*First Lieutenant Jon R. Waltz* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel John G. Lee.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial convicted the accused of sodomy, in violation of Article 125, Uniform Code of Military Justice, 10 USC § 925, and sentenced him to a dishonorable discharge, total forfeitures, and confinement at hard labor for one year. Intermediate appellate authorities affirmed and the accused appealed to this Court. We granted review to consider four matters. Two of these relate to the admission into evidence of a pretrial statement by the accused, and two concern the effect of Army regulations regarding the separation from the service of persons accused of homosexual acts.

At the trial defense counsel objected to the admission into evidence of the accused's pretrial statement to a criminal investigator on the ground that it was obtained involuntarily. The evidence in support of his objection is as follows: As the accused attempted to leave the barracks in which the alleged act of sodomy occurred he slipped from a ledge outside an upstairs window and fell to the ground, 20 to 25 feet below. He picked himself up and started to run but fell again. He was apprehended. Since he complained "of his head" and kept his hands pressed to his stomach, he was taken to the hospital for an examination. There he was examined by a medical doctor. Although the doctor was not completely satisfied with his "evaluation" of the accused, he released him to the custody of the criminal investigators. However, he instructed the agents that "if he [the accused] continued to complain" he was to be returned for "further check up." Actually the accused was suffering from an "incomplete fracture of the 8th and 9th ribs on the left" which was not discovered until sometime later. According to the doctor who examined the accused, an injury of that nature would cause "considerable pain."

On being released from the hospital, the accused was taken to the military police office. He was interrogated from three and one-half to four hours. The agent who questioned the accused knew that he had come from the hospital. He testified that the accused reported to the office at about 8:30 a.m.; the interrogation began at about 10:00 a.m. and continued without interruption for lunch until about 2:00 p.m. He also testified that during the interrogation the accused complained of being hot and told him that he had "to vomit." He was taken to the men's room where he "gag[ged] approximately three times." The accused washed his face, and indicated that he felt "better." At first, the accused denied any knowledge of the alleged act. He also said that he did not "wish to have any part" of the Army regulation under which a suspected homosexual can be tendered an undesirable discharge from the service in lieu of a court-martial. Eventually, however, the accused made an oral statement which was reduced to writing and signed by him. The agent admitted that the statement was not "spontaneous" but the result of his "interrogative ability." On cross-examination he also gave the following testimony:

"Q. Do you at any time in your interrogation recall Specialist Walker making a statement, 'How long are you going to hold me here,' and you replied to him, 'I am going to hold you here until I get the information I want. You ain't going anywhere until you give me the information I want. When you give me the information I want, you may go'?

"A. There was some conversation along this line, yes, sir.

"Q. In other words, he was presented with the possibility as soon as he made the statement satisfactory to your standards that he was free to go, he would be away from this interrogation, out of the place up there?

"A. Yes, sir."

Testifying on the voluntariness of his

pretrial statement, the accused substantially reiterated the testimony of the agent which is recited above. He said that, at first, he denied that he knowingly committed any illegal act. Later, the agent became "harsh and abusive" and told him that he was "dumb" not to make a statement and get a discharge. He began to feel ill. He asked the agent how long he had to stay there and was told "not to worry about going out because I would stay until I made a statement and then he would release me." Finally, the accused testified, "I got to the place where I couldn't think." He then gave the agent a statement "in order to get out of there and rest."

Article 31 of the Uniform Code forbids the admission in evidence of a statement obtained by coercion. The existence or nonexistence of coercion ordinarily is a question of fact. If there is sufficient evidence to support the ruling of the law officer admitting a pretrial statement into evidence his ruling will not be disturbed on appeal. United States v Webb, 1 USCMA 219, 2 CMR 125; United States v Volante, 4 USCMA 689, 16 CMR 263. However, if the facts are undisputed this Court can consider their legal effect. United States v Washington, 9 USCMA 131, 25 CMR 393; United States v Spivey, 8 USCMA 712, 25 CMR 216. See also Leyra v Denno, 347 US 556, 98 L ed 948, 74 S Ct 716, reh den 348 US 851, 99 L ed 671, 75 S Ct 18 (1954). In our opinion, the circumstances under which the accused's statement was obtained compel the conclusion that the statement is not voluntary. The law officer, therefore, erred in admitting it into evidence.

In view of our disposition of the evidence issue, the other claims of error need not be discussed in detail. A few comments, however, are appropriate. At the conclusion of the hearing on the voluntariness of the pretrial statement, defense counsel requested an opportunity to argue in support of his objection. The request was summarily denied. The ruling is contrary to the provisions of paragraph 53g of the Manual for Courts-Martial, United States, 1951, which provides that the parties be accorded an opportunity to argue their respective contentions and that "an arbitrary refusal to entertain argument on an interlocutory question, may constitute error."

The other allegations of error concern the provisions of AR 635-89. Two questions are presented. First, whether the regulation constitutes command control over subordinate military commanders in cases involving homosexuals. The matter was discussed in some detail by the staff judge advocate in his post-trial review. He refers to advice that he gave the convening authority before the charges were referred to trial to the effect that the regulation is "of questionable legality in view of recent court decisions." See United States v Hawthorne, 7 USCMA 293, 22 CMR 83; United States v Rinehart, 8 USCMA 402, 24 CMR 212. As a result, it is distinctly arguable that command control does not exist in this case, but, if so advised, the accused can inquire into the matter on the rehearing. The second objection to the regulation is that it was read by some of the court members, and the statement of policy regarding homosexuals set out therein prejudiced them against the accused. See United States v Hawthorne, supra. The information was elicited at the trial by defense counsel, but he did not challenge the members who had read the regulation or those who knew of it. Consequently, the Government argues that the accused waived the ground of challenge. See United States v Wolfe, 8 USCMA 247, 24 CMR 57; cf. United States v Walinch, 8 USCMA 3, 23 CMR 227. The matter also may be inquired into at the rehearing, and we need not consider it on this appeal.

The decision of the board of review is reversed and the findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

A reading of the entire testimony of the doctor, the investigator, and the accused convinces me that the issue of voluntariness was a question of fact, not of law. Counsel for the defense and I are not too far apart in our beliefs, for they concede there is a conflict, albeit, they say, the evidence preponderates heavily in favor of the accused. That conclusion follows naturally when his testimony is accepted as true. However, the court-martial was at liberty to disbelieve him and take the testimony favorable to the Government to support the findings and, when the evidence is viewed in that manner, a different result obtains.

As opposed to the facts laid out in the principal opinion, competent evidence for the government indicates the following: The accused complained of no specific injury when brought to the hospital; the physician only released him after a complete medical examination showed that he was fit for questioning; accused failed to complain to the Criminal Investigations Division agent of any pain during the interrogation; he experienced some touches of nausea, but this condition no doubt could have been caused by a severe "hangover," a result of the previous night's debauchery; he was interrogated from 10:00 a.m. until 1:30 or 2:00 p.m., but he was permitted some relief and a lunch was prepared for him which he declined to eat; and while he was released at 2:00 p.m., he did not go back to the hospital until the following day.

Therefore, to reach what I believe to be the correct solution, I merely follow the well-accepted rule that when a disputed question of fact is submitted to the court-martial members under appropriate instructions, their findings should not be reversed on appeal.