UNITED STATES, Appellee

v

JAMES E. ELLIOTT, Private First Class,
U. S. Army, Appellant

15 USCMA 181, 35 CMR 153

No. 17,819

December 24, 1964

*Captain John C. Smuck* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk, Major George O. Taylor, Jr.,* and *Captain Charles W. Schiesser.*

*First Lieutenant William W. Nelson* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Francis M. Cooper* and *First Lieutenant Anthony L. Tersigni.*

## Opinion of the Court

QUINN, Chief Judge:

On affirmance by a board of review of his conviction for three specifications of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921, the accused petitioned this Court for further review. The principal question is whether a pretrial statement by him was properly admitted in evidence over his objection.

About 11:00 p.m. on July 11, 1963,

Private First Class Joseph T. Curtin was posted as a guard in the battalion area. He took over the post from the accused. When relieved, the accused told Curtin to be sure to walk to the far end of the post; and he lingered in the area. The near end of the post, from the apparent point of relief, was behind the S-4 warehouse. As Curtin returned to that part of the post, he observed "somebody throwing something over the fence." He hastened

**181**

forward. The unknown person disappeared, but Curtin saw a bag on the ground and a pair of binoculars on the fence. He immediately reported the matter to the commander of the relief. An investigation indicated the warehouse had been entered.

Agent Louis H. Smith of the Criminal Investigations Detachment questioned the accused about the incident. He admitted that in informing the accused of his rights under Article 31, Uniform Code, supra, 10 USC § 831, he also read to him the elements of the offense of misprision of a felony, and told the accused that if he "was only a witness, he was required to testify upon . . . [being asked] what he knew [or be court-martialed]. If he was involved, he was not to say anything." As the agent construed Article 31, it entitled a person to refuse. to make a statement only "[i]f . . . guilty of something." In United States v Williams, 2 USCMA 430, 432, 9 CMR 60, the accused was similarly advised that " '[i]f . . . guilty of this offense . . . you are not compelled to answer,' but all other questions which would aid the solution of the crime . . . [you are] obligated" to answer. We condemned this advice as contrary to the rights of an accused under Article 31 to refuse to "make *any* statement regarding the offense." (Emphasis in the original.) Consequently, had the accused's statement been made at this time, it would have been inadmissible as a matter of law. However, no incriminating statement was made in this interview; but one was made at a second interview about six hours later. The Government contends the two interviews were sufficiently separate in time and circumstance to justify the law officer's ruling admitting the statement in evidence. See United States v Goard, 13 USCMA 588, 594, 33 CMR 120.

The first interrogation of the accused took place about midnight. Initially, the accused refused to say anything. Although it appeared to Smith that the accused was " 'very tired,' " he continued to prod him into a discussion of the incident. Occasionally, Smith "talk[ed] to other people for . . . more points" to use against the accused. At about 3:30 a.m., the accused finally told Smith that if he " 'let . . . [him] go to sleep' " he would tell him " '[e]verything' " he had done since arriving in Korea. Smith let him go. He next saw the accused about 9:00 a.m.

Before the second meeting, the accused had been interrogated by Agent Ashoff and "made admissions." Smith admitted he received from Ashoff "the notes that he had taken from . . . [the accused's] admissions to him," but apparently Smith did not participate in the events preceding his interview with the accused. The accused, however, testified, without contradiction or impeachment, to some of the events.

According to the accused, he had had about three hours of sleep. At 6:30 a.m., he reported, as directed, to the battalion commander. Preliminarily, the battalion executive officer informed the accused he was "going to be court-martialed . . . if . . . [he] didn't make a statement." Unfortunately, the record of trial is silent as to what exactly transpired between the accused and the battalion commander and the accused and Ashoff, but the general tenor of the accused's testimony is that he received no advice as to his rights under Article 31 different from that given him by Agent Smith. The accused's testimony, therefore, discloses no circumstance tending to show he was correctly informed of his rights under Article 31.

Disregarding the effect of the "admissions" by the accused to Agent Ashoff, which were passed on to Agent Smith, Smith's account of his second interrogation of the accused also offers nothing from which the law officer could reasonably conclude that the "chain of causation" between that interview and the erroneous advice of the midnight meeting was broken. United States v Bennett, 7 USCMA 97, 101, 21 CMR 223. On direct examination, Agent Smith testified that at the second interview he "advised" the accused of his rights under Article 31

and told him he did not have "to make a statement." Smith's understanding of the nature of the accused's rights under the Article was demonstrated to be erroneous. Consequently, his general statement that he "advised" the accused of his rights must be construed as advice based on his mistaken conception of the provisions of Article 31. See United States v Berry, 6 USCMA 609, 613, 20 CMR 325. In addition, under examination by defense counsel, Smith substantially qualified his direct testimony. He admitted that when he took the accused to his office for the second interview he "either *reminded him* or read him his rights under Article 31 again." (Emphasis supplied.)

The pretrial statement contains a printed preliminary certification by the accused that he understood he did not have "to make any statement whatsoever"; but this statement is prefaced by another to the effect that Article 31 was "explained" by Agent Smith. The evidence shows the explanation first given to the accused was wrong; and it does not appear that a correct explanation was ever provided, under circumstances clearly showing that before the pretrial statement the accused knew and understood he had an absolute right to refuse to make any statement whatsoever. The only reasonable conclusion supported by the evidence, therefore, is that Article 31 was not complied with, and the accused's pretrial statement should not have been admitted in evidence over his objection. United States v Walker, 9 USCMA 187, 190, 25 CMR 449; United States v Famiglietti, 15 USCMA 152, 35 CMR 124.

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judges FERGUSON and KILDAY concur.