UNITED STATES, Appellee

v

ROBERT J. MACKEY, Private, U. S. Army, Appellant

21 USCMA 254, 45 CMR 28

*Captain John D. Lanoue* argued the cause for Appellant, Accused. With him on the brief were *Colonel George J. McCartin, Jr.,* and *Captain Robert B. Harrison, III.*

*Lieutenant Colonel Ronald M. Holdaway* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant* and *Captain David E. Wilson.*

## Opinion of the Court

DARDEN, Chief Judge:

We granted review of this case to consider further the circumstances in which this Court's holding in United States v Bearchild, 17 USCMA 598, 38 CMR 396 (1968), is to apply.

In December 1969, Mr. George R. Kimball, a civilian employee in Vietnam of the United States Agency for International Development, apprehended Private Mackey as a possible deserter from the United States Army. Mr. Kimball accomplished the apprehension in compliance with instructions from a United States Army colonel who was the senior advisor for the province. After Mr. Kimball took Private Mackey to the colonel's headquarters, the colonel decided that Private Mackey should be confined overnight in something known as a CONEX container, which we were informed during oral argument is a metal container used originally for shipping large objects.

Mr. Kimball informed Private Mackey that if he tried to escape from the container, Montagnard guards might shoot him. According to Mr. Kimball, Private Mackey responded that he could not be in any more trouble than he was already in and that he would be tried for murder if he returned to his unit. Mr. Kimball then called Mackey's unit at Nha Trang and was informed that Mackey was indeed suspected of murder. When Mackey later asked Mr. Kimball whether he had called Nha Trang, he answered in the

affirmative, but stated he had been informed it was all a " 'big story, no such girl existed.' " Private Mackey replied, " 'Well, she was dead when I left her,' or words to that effect." The next day Mr. Kimball escorted Private Mackey on a flight to Nha Trang and the latter stated, " 'I'll probably wind up getting about 20 years for this.' "

At trial, defense counsel moved to suppress Private Mackey's admissions to Mr. Kimball on the separate grounds that a full warning of rights had not been given and that the conditions of his confinement coerced private Mackey. Because of his decision that no interrogation had occurred, the military judge denied the motion to suppress.

After Private Mackey pleaded not guilty to murder and Mr. Kimball testified before the military jury, Private Mackey testified on the merits. He admitted sleeping with the victim and having waked up early the next morning, sitting on her body with his hands on her throat. He testified he did not remember anything else before the moment he found himself sitting on the victim.

Trial defense counsel requested that the military judge submit to the court-martial the issue of the voluntariness of the pretrial admissions and the effect of the absence of a complete warning of rights. The military judge gave an extensive instruction, including a statement that Private Mackey had received no warning, but the military

judge did not instruct the members that the Government had an obligation to demonstrate affirmatively that the admission in evidence of Private Mackey's pretrial statement did not induce his in-court testimony and that if the Government failed to make such a demonstration, the incriminatory part of the in-court testimony must be disregarded.

Before this Court, appellate defense counsel argue that the Government did not meet its burden of showing that the appellant's testimony was not impelled by the admission of his pretrial statements. They point to what they consider the weak circumstantial case the Government presented and assert that the evidence suggests a likelihood of suicide as strongly as one of homicide. They discount trial defense counsel's opening statement that the defense would prove that the appellant had no criminal intent and that Miss Buoc, the victim, had died at a time when the appellant had blacked out. They also discount trial defense counsel's having declared during *voir dire* that the appellant probably would testify. They argue that these statements came after the military judge's decision to admit the pretrial statements.

We consider first the granted issue of whether the trial judge erred prejudicially by not giving, on his own initiative, an instruction limiting the circumstances in which Private Mackey's testimony could be considered against him if the court found his pretrial statements involuntary.

This Court formulated the *Bearchild* rule by appellate determination that Bearchild's pretrial statements were involuntary, and that his testimony could not cure the defect because the record failed to convince this Court that Bearchild would have testified as he did, even if his pretrial statements had not been introduced against him. The *Bearchild* opinion declares that the Government has the burden of establishing that an inadmissible pretrial statement did not impel an accused to testify. That opinion did not hold

that when the voluntariness of a pretrial statement is an issue at trial, the trial court must also determine whether the Government has demonstrated that the accused would have testified, regardless of the use of his pretrial statements.

In several cases decided after *Bearchild,* this Court and the Courts of Military Review determined that the Government had failed to dispel an inference that an accused would not have testified except for the use against him of statements held on appeal to be inadmissible. United States v Attebury, 18 USCMA 531, 40 CMR 243 (1969); United States v Robertson, 17 USCMA 604, 38 CMR 402 (1968); United States v Surenian, 41 CMR 963 (AFCMR 1970); United States v Phifer, 40 CMR 680 (ACMR 1969); United States v Allison, 40 CMR 602 (ACMR 1969); United States v Turner, 39 CMR 741 (ABR 1968); United States v Tucker, 39 CMR 646 (ABR 1968). In all these cases, however, the decision to reverse came after a decision by *the appellate court* that the pretrial statement in question was involuntary *as a matter of law.* As Government counsel in this case correctly point out, when the cases cited above were returned for a rehearing, they were sent back not for the trial court to determine whether the in-court testimony was impelled but for a rehearing if the Government thought it could prove its case without the inadmissible pretrial statements. If such a rehearing occurred, the Government's prohibition against use of the pretrial statement presumably caused the accused's decision whether to testify to be uninfluenced by the existence of pretrial statements. Although the *Bearchild* opinion did not require the trial court to decide, after considering instructions the judge initiated, whether the Government had introduced convincing evidence a pretrial statement the court later might find involuntary had not caused an accused to testify, we now must decide whether a determination of whether the Government has carried its burden in this respect is one for the trial court.

Some military judges have regarded *Bearchild* as creating not a rule for appellate application but a question to be decided at trial. In United States v Hurt, 19 USCMA 206, 41 CMR 206 (1970), the judge instructed, over strong defense objection, that if the military jury was not satisfied beyond a reasonable doubt that Hurt's pretrial statements were voluntary, his in-court testimony could not be considered unless the jury was satisfied beyond a reasonable doubt that the statements did not impel the testimony.

Because at least a part of Hurt's testimony was exculpatory, we reversed from concern that the jury may have thought it had to disregard all his testimony if it found his pretrial statement involuntary and if the Government had not demonstrated that existence of the statement did not influence his decision to testify. A similar concern motivated the decision in United States v Carey, 21 USCMA 33, 44 CMR 87 (1971).

Until now, we have not directly considered whether military judges must on their own initiative give an instruction incorporating the *Bearchild* principle.

In the view of appellate defense counsel, the triers of fact, if they decided to disregard a pretrial statement, should also decide whether the Government established that the statement did not induce live testimony.

In their opinion, restricting application of the *Bearchild* rule to the appellate level, as did the United States Army Court of Military Review in United States v Carey, 43 CMR 639 (ACMR 1971), reversed on related grounds, 21 USCMA 33, 44 CMR 87 (1971), would frequently create a situation requiring a rehearing on the very issue the trial court could have decided if it had been properly instructed in the beginning. This argument may misconceive the sequence of events and the consequences under appellate application of *Bearchild*.

Under appellate application the court considers whether an accused's testimony was caused by an involuntary confession only after the appellate court has found as a matter of law that the confession was involuntary. If the appellate court then reverses, the consequence is that the confession is inadmissible; if a rehearing occurs, the issue of whether the appellant's testimony resulted from the statement should not reoccur. Accordingly, the contention that the failure to litigate the *Bearchild* issue at trial causes needless delay may not be soundly based.

One of the factors to be considered in deciding whether the *Bearchild* principle is for trial court determination is how the Government can, in the language of the *Bearchild* opinion, "affirmatively show 'that its illegal action did not induce . . . [an accused's] testimony'" and "dispel the *inference* that no testimonial utterance would have been made had not prosecution already 'spread the petitioner's confessions before the jury.'" (17 USCMA, at page 603.) The *Bearchild* opinion apparently contemplated testimony on the point, because it declared the Government could not meet the test "by standing on a barren record." (*Id.,* at 603.) But the accused and his counsel are the most likely witnesses on the issue. Aside from the impossibility of requiring either to testify, we could hardly expect either to hinder his cause by acknowledging that the accused would have testified, irrespective of the use of his extrajudicial statement.

A more likely possibility is that the Government would attempt to meet its burden by presenting so much evidence of guilt in addition to the extrajudicial statement that the use of the statement becomes, in effect, harmless error.[1] If this quantity of evidence existed, the Government hardly would risk a reversal by using an out-of-court statement of questionable voluntariness.

---

[1] So far the Supreme Court has not applied the Constitutional harmless error rule to involuntary confessions and neither has this Court.

These practical difficulties obtain even if an appellate, rather than the trial, court applies the *Bearchild* test. A trial strategy on whether an accused should testify in his own behalf depends on an evaluation of many circumstances. While some of the considerations that affected ■■■■■■■■ ■ such a decision may be inscrutable to appellate judges as well as to laymen, we believe that in most cases appellate courts are better qualified to determine from the record whether an accused's testimony was uninfluenced by use against him of pretrial statements.

Appellate application of the *Bearchild* decision has the incidental advantage of dispensing with the need for an additional instruction that at best tends to be complicated and at times produces instructional error. See United States v Hurt and United States v Carey, both supra. Although simplicity is a desirable objective, we should not seek it at the expense of handicapping an accused by denying the trial court guidance that might benefit him. In this instance we perceive no reason that the trial court is in a preferable position to decide this issue or that the trial court is more likely to decide it in favor of an accused. Accordingly, we hold that the military judge had no *sua sponte* duty to instruct on the *Bearchild* issue.

The result in the instant case is that only if we determine that Private Mackey's pretrial statements were inadmissible as a matter of law do we then address the influence of those statements on his decision to testify.

Trial defense counsel argued against admission of the statements on the ground that the warnings to Private Mackey were deficient[2] and on the ground that the conditions of his confinement coerced him. The military judge denied the motion to suppress as a result of his determination that Mr. Kimball had not interrogated Private Mackey. The necessary implication is that he also denied the coercion argument.

Conflicting testimony existed on Mr. Kimball's response to Private Mackey's statement that he could hardly be in more ■■■■■■ ■ trouble. According to Private Mackey, Mr. Kimball then asked, "What [do you] mean?" or "How is that?" But Mr. Kimball's version was that when Private Mackey said he could hardly be in more trouble he also stated he could be tried for murder if he went back to his unit, and when Mr. Kimball, in earthy terms, admonished Private Mackey not to mislead him, Private Mackey insisted he was speaking truthfully, gave the victim's name, and suggested he call the police in Nha Trang. The military judge resolved the factual issue against the accused and admitted the pretrial statements for consideration by the court. We find that the judge had a reasonable basis for his decision.

Similarly, the evidence on conditions of confinement fails to convince us that the judge erred ■■■■■■■ ■ in his decision to admit the statements into evidence. Confinement facilities meeting normal standards for Vietnam apparently were unavailable at the location. Agreement existed that mosquitoes infested not only the CONEX but the whole area and that not only the CONEX but the whole area was dirty. The accused was provided a stretcher to sleep on and a blanket. He had been apprehended after normal dinner hours and when he asked about food the mess hall was closed. The statements in issue were apparently expressed when Private Mackey had been confined for not more than a few hours. Comparing the conditions of

---

[2] The warnings that were deficient preceded questioning of Private Mackey immediately after apprehension. The questioning was by the colonel who was Mr. Kimball's supervisor. Mr. Kimball and Private Mackey disagreed on whether an Article 31 warning had been given. But this questioning concerned only Private Mackey's possibly being a deserter. At the time of this questioning, the colonel had no information about the homicide.

his confinement with living conditions of persons in the area who were not confined, the military judge could reasonably reject the coercion argument.

We affirm the decision of the Court of Military Review.

Judge QUINN concurs.

DUNCAN, Judge (concurring):

I am in agreement with the well-expressed opinion of the Court. I write my added thought on the so-called *Bearchild* rule.

United States v Bearchild, 17 USCMA 598, 38 CMR 396 (1968), was decided after the Supreme Court of the United States decided Harrison v United States, 392 US 219, 20 L Ed 2d 1047, 88 S Ct 2008 (1968). *Bearchild* then replaced the long-standing rule of United States v Trojanowski, 5 USCMA 305, 17 CMR 305 (1954). In *Trojanowski,* this Court held that a judicial confession removed the specter of prejudice arising from the admission of the coerced pretrial statement.

The storm of confusion appears to center around a determination as to whether the *Bearchild* rule is to be implemented at the trial level or at the appellate level. The confusion, in my judgment, begins with language in *Bearchild* to the effect that "the Government is called upon to *affirmatively show* 'that its illegal action did not induce his testimony.'" United States v Bearchild, supra, at page 603. Such is the traditional language of the trial court.

I believe a considerable amount of that confusion is rooted in reference to Harrison v United States, supra. At Harrison's first trial his pretrial statement was unlawfully admitted into evidence; he then testified in his own defense. On appeal the trial court's judgment was reversed because of the erroneous admission of the pretrial statement. In Harrison's second trial the illegally taken statement was not used again; however, when Harrison did not testify, the prosecution, over a defense objection, read to the triers of fact the testimony the defendant gave in the first trial. The Supreme Court held that at the second trial in order to justify the reading of such testimony the prosecution had the burden of demonstrating that the defendant's testimony in the first trial had not been impelled by the unlawful admission of his statement.

Only under those kinds of circumstances does the problem arise in a trial court.

As I look at it, the principles are these. Jackson v Denno, 378 US 368, 12 L Ed 2d 908, 84 S Ct 1774 (1964), requires the military judge, upon objection, to rule upon the admissibility of an admission of confession as a matter of law. He may then present it as a question of fact to the triers of fact. The military judge should not then charge on what should be done with such evidence except the customary charge to the effect that if the confession or admission is found to be involuntary it is to be disregarded.

A rule of trial practice which would then require the fact finders to determine whether an accused would have testified in his own behalf, but for the erroneously admitted pretrial statement, would drive them into a corner of complication and hamper them in their already complex fact-finding obligation.

The effect of an illegally admitted accused's pretrial statement upon an accused's subsequent in-court testimony is a matter for a reviewing court. Upon complaint by an accused, if an appellate court finds as a matter of law that an accused's confession or admission was erroneously admitted into evidence and finds from the record that there is insufficient evidence to show that the accused's testifying was untainted by such improperly admitted evidence, prejudicial error arises.