UNITED STATES, Appellee

v

STEVEN L. CARMICHAEL, Airman First Class, U. S. Air Force, Appellant

21 USCMA 530, 45 CMR 304

No. 25,132

July 14, 1972

*Colonel George M. Wilson* argued the cause for Appellant, Accused.

*Major Stark O. Sanders, Jr.,* argued the cause for Appellee, United States. With him on the brief was *Colonel Henry R. Lockington.*

## Opinion of the Court

DARDEN, Chief Judge:

We granted review on the issue of the admissibility of Airman Carmichael's pretrial statement.

A special court-martial, consisting of only a military judge and sitting in Taiwan, convicted appellant Carmichael of attempting to sell marihuana, absence without leave, and possessing marihuana. He had pleaded guilty only to the absence without leave charge.

The court sentenced him to a bad-conduct discharge, forfeiture of $125 per month for four months, confinement at hard labor for four months, and reduction to the lowest pay grade. The United States Air Force Court of Military Review affirmed the findings and the sentence.

The controversy surrounding the pretrial statement concerns the manner in which the interview that produced the statement was conducted. After the appellant's apprehension on March 31, 1971, his interrogator gave him adequate warnings regarding his right to silence and to counsel. In the initial five or ten minutes of the interview that followed, appellant denied having possessed or sold marihuana. As the interview continued, the interrogator informed him that if he told the truth "it might be better for him" and that "what he said didn't jibe with what evidence there was." During the interview, which lasted about 45 minutes, the appellant indicated only a preference not to answer a particular question and apparently he did not do so.

The part of the interview that produced the instant issue is this:

"A [Agent Silliman]. . . . We

also told him anything he told us would be written in the form of a report which would go to his commander; that his commander would see all the facts and that the report would have a gap, more or less, if he declined to make a statement or if he continued on in the same vein, in the face of what evidence there was. We also told him that there was a possibility if he cooperated with the OSI in making a statement, it would go to an American court rather than a Chinese court. And we told him, I believe, about Starks, Eaton and Sweat, three GIs who had been on International Hold for two-and-a-half years, pending trial in a Chinese court. That's all I recall.

. . . . .

"Q. [Defense Counsel]. You indicated the disposition of this was to gather evidence and sent it to the commander, and if he didn't say something or at least tell the truth, there would be a serious gap in the file and it would make it difficult for his commander to decide what action to take?

"A. We explained to him it was his commander's prerogative whether or not to refer it to a court.

"Q. Did you say this in the vein suggesting maybe if he did say something his commander probably wouldn't?

"A. No.

"Q. You also indicated you needed his statement to complete the report?

"A. I don't remember the exact words. A better way to word it would be 'to make a more logically complete report'.

"Q. Could you describe more fully for the court how you communicated to them the American disposition of the case and the Chinese disposition of the case?

"A. I don't think I can explain it any more fully than I have.

"Q. Did you indicate that anything he might have said had any bearing on the decision as to who would handle the case? I think you suggested if he cooperated it would go to an American court rather than a Chinese court, and then you mentioned Starks, Eaton and Sweat.

"A. We probably said 'might have a bearing'; we wouldn't say 'would have a bearing'.

"Q. Then you proceeded to let him know the undesirable results of sending the case to the Chinese courts? In other words, the Chinese court would handle this on a much more severe basis?

"A. I can't say 'severe'; on a more 'protracted' basis, using this one particular case that we used as an example."

The appellant later made a full statement as to his participation in the attempted sale and possession of marihuana, which was admitted into evidence over trial defense counsel's strong objection. In objecting, trial defense counsel urged that the interrogator's comments constituted unlawful inducement and coercion as a matter of law.

Continuing the argument, appellate defense counsel asserts that the interrogator's statements engendered in the appellant's mind enough hope or fear to make his later confession involuntary and inadmissible in evidence under our decision in United States v Planter, 18 USCMA 469, 40 CMR 181 (1969). See United States v Mewborn, 17 USCMA 431, 38 CMR 229 (1968).

Despite impeccable advice of rights before a custodial interrogation, later conduct or statements of interrogators may counteract the earlier warning. We encountered this recently in United States v Hundley, 21 USCMA 320, 45 CMR 94 (1972). Other cases have involved the principle that actions after a warning may demonstrate sufficient coercion or improper inducement to impinge on a suspect's freedom of choice between speech and silence. United States v Dalrymple, 14 USCMA 307, 34 CMR 87 (1963); United States v Green, 15 USCMA 300, 35 CMR 272 (1965).

What was said in this case impresses us as being comment that must be tested for its effect as coercion or improper inducement. We faced in *Hundley,* supra, a situation in which the nature of the postwarning statements was that the accused did not have the right to remain silent if the interrogators were wrong in suspecting him. This conflicted with this Court's construction of Article 31, Uniform Code of Military Justice, 10 USC § 831, in United States v Williams, 2 USCMA 430, 9 CMR 60 (1953).

The interrogator's comments that appellate defense counsel assails in the case before us are those indicating that the appellant's commanding officer would not understand his not confessing to an offense as to which other evidence suggested his involvement and that a confession might influence his commanding officer's decision on whether an American court would try the case.

As to the commanding officer's knowledge that appellant had remained silent despite strong evidence of his guilt, we recognize that the powers of a commander are such that it is trite to say a member of the armed forces has many good reasons to want to keep his superior happy. A reminder of what the appellant reasonably should have realized has perhaps some tendency to induce a statement. But our view is that this reminder does not amount to improper inducement as a matter of law. The Court has held a statement to an accused that if he refused to cooperate he would be turned over to the Federal authorities and that " 'it would be better' for him to be tried by the military" raised only an issue for the triers of fact. See United States v Johnson, 9 USCMA 591, 593, 26 CMR 371 (1958). The military judge's determination in the instant case is easily within the range of that decision.

The second comment under attack held out the possibility that a confession could result in the appellant's being tried by an American rather than a Chinese court. The reference to three Americans who had been held for 2–1/2 years pending ing trial by a Chinese court was obviously intended to encourage a confession. From the record we cannot be sure whether this was because of the length of the pretrial delay or the reputation of the courts on Taiwan for dealing harshly with marihuana and drug offenders. In any event, the statement was not untrue and it was not an unqualified declaration that the appellant would benefit from confessing. The instant case is therefore distinguishable from United States v Handsome, 21 USCMA 330, 45 CMR 104 (1972).

The presence of improper influences or pressures in an interrogation does not alone taint a resulting statement. A necessary additional consideration is whether the statement was induced by such influences. United States v Green, 7 USCMA 539, 23 CMR 3 (1957); United States v Barksdale, 17 USCMA 500, 38 CMR 298 (1968). Here, the circumstances satisfy us that accused's statement was not so induced.

The difference between what constitutes improper inducement or coercion as a matter of law and as a question of fact is necessarily one of degree. Where the evidence permits different inferences, an appellate court should accept the determination of the trier of fact if it is supported by substantial evidence. United States v Webb, 1 USCMA 219, 2 CMR 125 (1952); United States v Jackson, 3 USCMA 646, 14 CMR 64 (1954). Our holding is that the possibility appellant's confession could influence a decision for trial by an American court presented at most a factual issue of unlawful inducement for resolution by the military judge.

We affirm the decision of the Court of Military Review.

Judge QUINN concurs.

DUNCAN, Judge (dissenting):

Recently in United States v Handsome, 21 USCMA 330, 333, 45 CMR 104

(1972), this Court unanimously declared:

". . . [I]f an exhortion or adjuration to speak the truth is connected with *suggestions* of a threat or benefit, the confession is inadmissible." [Emphasis supplied.]

The majority seeks to distinguish *Handsome* on a fact basis.

In *Handsome,* the appellant denied involvement in the offense under investigation and agreed to submit to a polygraph examination. Upon completion of the examination, the operator (Chief Warrant Officer Christopherson) informed Handsome that the test results indicated that he was lying. He then cited an example of a person with the same test results who received a relatively severe sentence after continuing to deny guilt. Christopherson stated that the other suspect would have benefited by telling the truth and that Private Handsome would also benefit if he told the truth. Immediately thereafter Handsome admitted his involvement.

In the case at bar, Agent Silliman, the interrogator, testified that during the initial five or ten minutes of the interview the appellant denied having possessed or sold marihuana. After having been told of the so-called gap in the report caused by the absence of the appellant's statement and the possibility "if he cooperated . . . it would go to an American court rather than a Chinese court," the appellant made an oral statement to Silliman detailing his participation in possession and attempted sale of marihuana, which was admitted in evidence over defense counsel's strong objection.

The majority opinion concedes that "[t]he reference to three Americans who had been held for 2-1/2 years pending trial by a Chinese court was obviously intended to encourage a confession." For what other reason could the statement have been made? They conclude, however, that since "the statement was not untrue and it was not an unqualified declaration that the appellant would benefit from confessing," this case is distinguishable from *Handsome.*

I do not read *Handsome* so narrowly. As we stated therein:

". . . This Court has followed the law of the Article III courts in this area, and for Article III courts the basic authority for the exclusion of confessions connected with threats or benefits is Bram v United States, 168 US 532, 542–543, 42 L Ed 568, 18 S Ct 183 (1897). The quotation cited with approval in *Bram* that:

" 'But a confession in order to be admissible must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. . . . A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for *the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted.'* "

has, in turn, been quoted with approval many times in decisions by the Supreme Court of the United States and this Court. See, *e.g.,* Malloy v Hogan, 378 US 1, 12 L Ed 2d 653, 84 S Ct 1489 (1964), and United States v Askew, 14 USCMA 257, 261, 34 CMR 37 (1963)." [Emphasis supplied.] [*Ibid.,* at page 333.]

Under the rule expressed in Bram v United States, 168 US 532, 42 L Ed 568, 18 S Ct 183 (1897), iterated in *Handsome,* I would hold that Silliman's tactics, about which there is no factual dispute, amounted to unlawful inducement and influence as a matter of law.