UNITED STATES, Appellee

v

EDMUND M. PYATT, Private, U. S. Marine Corps, Appellant

22 USCMA 84, 46 CMR 84

No. 25,593

December 29, 1972

*Lieutenant David G. Grimes, Jr.,* JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant James T. Newsom,* JAGC, USNR.

*Lieutenant E. Alan Hechtkopf,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Commander Michael F. Fasanaro, Jr.,* JAGC, USN, *Lieutenant Colonel G. L. Bailey,* USMC and *Lieutenant James B. Ginty,* JAGC, USNR.

## Opinion of the Court

DUNCAN, Judge:

The appellant was convicted by special court-martial of a single specification of larceny of a wallet and currency contained therein, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. His conviction and sentence to a bad-conduct discharge, confinement at hard labor for four months, and forfeiture of $90.00 per month for a like period, has survived appellate review to this

level. We granted review to determine whether the Court of Military Review erred in holding that the appellant's confession was untainted by his prior unwarned statements while under custodial interrogation and by a prior unlawful search.

The record reflects that on June 30, 1971, a theft of a wallet containing $350.00 in currency occurred in a barracks. The victim reported the theft to proper authorities. First Lieutenant Haren, the Executive Officer, interviewed several people and then directed that the appellant be brought to his office. Appellant was informed that there had been a theft in the company that afternoon and that Haren and Investigator Wilson desired to ask him some questions. Appellant was then directed to take out his wallet and count out the money. The wallet was found to contain $292.00. In response to questions by both Haren and Wilson, the appellant was unable to explain, to their satisfaction, where he had obtained such a large sum. Haren testified "when it became obvious that his [appellant's] answers weren't what we were looking for" he "called PFC Pyatt to attention and read him Article 31 [Code, supra, 10 USC § 831]." Haren acknowledged that at the time he began questioning Pyatt he suspected him of having committed the offense of larceny.

Thereafter, the appellant was handcuffed and taken to the Provost Marshal's office where he was advised by Wilson that "he was still under Article 31." Following unproductive questioning the appellant was placed on restriction. The next afternoon, July 1st, the appellant was summoned to the Provost Marshal's office where he was again advised of his rights and was interrogated by Investigators Erath and Wilson. After about 20 to 25 minutes the appellant admitted that he had committed the larceny of

the wallet and its contents and signed a written statement to that effect. During the interrogation and prior to confessing, the appellant "seemed a little nervous . . . seemed to be sweating somewhat and at one time he cried."

The Court of Military Review held that the action of requiring the appellant to display the contents of his wallet, which that court characterized as a search, was unlawful on the ground that the search was not conducted as an incident to lawful apprehension,[1] and that the circumstances were not such as to demand immediate action to prevent disposal of stolen property. The court went on to hold, however, that the subsequent confession was untainted by the effects of the unlawful search because, on July 1st, "neither the search nor the money found in his possession was discussed" and the "appellant steadfastly refused to confess or to make any admissions prior to the time he was interrogated on 1 July 1971."

The record of trial reflects that the $292.00 contained in the appellant's wallet was immediately confiscated by Lieutenant Haren.[2] Investigator Wilson testified relative to the interrogation on June 30th:

"On that day I asked him to account for his money; how come he had $292.00 in his possession when he was only paid $67.00? I asked him, how come he came out with $292.00? I asked him to explain it."

With regard to the following day's interrogation, the day of the confession, Wilson was queried:

"Q. What were the questions you asked the accused?
"A. Well, they concerned his money—how he came up with $292-.00 when he is only paid $67.00. We asked him to name the sources of

---

[1] The judges of the Court of Military Review found that "[h]e was not apprehended or taken into custody until after he had removed his wallet and its contents from his pocket and the

contents were examined by Lieutenant Haren and Investigator Wilson."

[2] This money was introduced in evidence as Prosecution Exhibit 4.

the money and how much they were. I added them up.

"Q. Is that all you asked him?

"A. I asked him why there was a difference. The answers were different."

At trial, the initial basis proffered by defense counsel when he objected to the admission in evidence of the appellant's confession was that the confession was the "product of a testimonial act by the accused on the 30th of June which was made without proper warnings." When the appellant testified on the question of the voluntariness of the confession, the military judge inquired of him:

"Q. Did the fact that Lieutenant Haren and Specialist Wilson know that you had $292.00 in your wallet influence you to make that statement?

"A. Yes, sir, it did."

Apparently contrary to Wilson's testimony, the appellant acknowledged that while Erath and Wilson did not *specifically* mention the $292.00 during the interrogation on July 1st, "the fact that my physical condition was bad plus the fact that I had the money . . . made me tell them that I did it."

The military judge ruled that the $292.00 was obtained not through a request for a statement but as the result of a search, for which he found probable cause. In addition, he also found that even assuming that the search was unlawful, the subsequent statement was not the result of that search because during the course of the interrogation no reference was made to the money found in the wallet.

■ Whether the appellant's disclosure of the contents of his wallet be denominated a *statement* or the result of a search is unimportant under the circumstances of this case. Lieutenant Haren's order that he do so required a prior warning under Article 31, Code, supra, since Pyatt was suspected of the offense of larceny and the physical act that followed resulted in the production of incriminating evidence.[3] United States v Corson, 18 USCMA 34, 39 CMR 34 (1968), and cases cited therein. If there existed probable cause to arrest and search the accused, it is not disclosed by this record. In any event, we agree with the Court of Military Review that the appellant was not in fact apprehended or taken into custody until after he had complied with Lieutenant Haren's illegal order. Cf. United States v Cuthbert, 11 USCMA 272, 29 CMR 88 (1960).

■ We believe, however, that the Court of Military Review erred in holding that the subsequent confession was untainted. In United States v Hundley, 21 USCMA 320, 325, 45 CMR 94, 99 (1972), this Court unanimously declared:

"If the Government secures admissions without full compliance with the law and the admissions are a kind likely to produce a later confession, convincing evidence must exist that a later warning severed the presumptive influence of the first statement on the later one. United States v Bennett, 7 USCMA 97, 21 CMR 223 (1956). Whether the influence of the first statement taints the making of the second depends on the circumstances. United States v Caliendo, 13 USCMA 405, 32 CMR 405 (1962). One of the circumstances to be considered in deciding the voluntariness of a later statement is the earlier obtaining of an inadmissible statement. United States v Powell, 13 USCMA 364, 32 CMR 364 (1962); United States v Bennett, supra."

And in United States v Bennett, 7 USCMA 97, 101, 21 CMR 223, 227 (1956), we said:

". . . Furthermore, absent any showing that the accused knew or had been informed that his prior admissions could not be used against him, the fact that he was advised of his rights prior to the execution of his confession would normally

---

[3] The $292.00 obtained thereby was thus inadmissible in evidence.

not avoid the Taylor [United States v Taylor, 5 USCMA 178, 17 CMR 178 (1954)] result."

The evidence illegally obtained by Lieutenant Haren and Investigator Wilson was of "a kind likely to produce a later confession." United States v Hundley, supra, at 325, 45 CMR at 99. Thereafter, Wilson was present and participated in each confrontation with the appellant, as noted above. Whether the previous day's disclosure was again specifically referred to when the confession was obtained (see United States v Crow, 19 USCMA 384, 41 CMR 384 (1970)), is not controlling for there is simply no evidence "that the accused knew or had been informed that his prior admissions could not be used against him." United States v Bennett, supra, at 101, 21 CMR at 227. The appellant testified that the finding of the money influenced him to make the statement (cf. United States v Foecking, 22 USCMA 46, 46 CMR 46 (1972)), and Wilson testified that "[w]e asked him to name the sources of the money and how much they were." When the same investigator is involved in every stage of the investigation, during a 24-hour or less period, it is unnecessary to repeat every question or recite every known fact. It can reasonably be presumed that the interrogator and the suspect are competent to retain such information over a short period of time. Indeed, it is this simple fact which permits an investigator to remind one accused, at a later interview, that he is still under the prior warning. See United States v White, 17 USCMA 211, 38 CMR 9 (1967).

Under the circumstances of this case, we hold that the appellant's confession of guilt was tainted by the prior illegal seizure; hence, inadmissible in evidence. United States v Hundley, supra; see also United States v Harvey, 21 USCMA 39, 46, 44 CMR 93, 100 (1971).

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Chief Judge DARDEN and Judge QUINN concur.