**UNITED STATES, Appellee,**

v.

**Private First Class (E–3) Kearney Alexander TERRELL, SSN 125–44–2179, United States Army, Appellant.**

**CM 436775.**

U. S. Army Court of Military Review.

28 June 1978.

Colonel Robert B. Clarke, JAGC, Major Benjamin A. Sims, JAGC, Major Carlos A. Vallecillo, JAGC, and Captain Peter A. Nolan, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Captain Laurence M. Huffman, JAGC, and Captain Paul W. Jacobson, JAGC, were on the pleadings for appellee.

Before CARNE, COOK and THORNOCK, Appellate Military Judges.

## OPINION OF THE COURT

COOK, Judge:

At a bench trial, the appellant was found guilty, contrary to his pleas, of larceny of an AM/FM receiver and two speakers valued at more than $100.00. This offense was charged as a violation of Article 121, Uniform Code of Military Justice (UCMJ), (10 U.S.C. § 921).

The single issue upon which we focus our attention concerns the admissibility of appellant's confession made to Special Agent (SA) Bennett. As in all cases involving this issue, the facts are of the essence. Therefore we will recite those we deem dispositive.

On 18 July 1977, Sergeant Anglin reported to his company supply room in order to repossess some personal property he had stored there while he was absent from the unit on temporary duty. Among the items he had placed in storage was an AM/FM Pioneer receiver and two Pioneer speakers. In spite of a diligent search of the premises, these latter pieces of property were not to be found. A report was made to the local Criminal Investigation Division (CID) office

and SA Bennett was dispatched to investigate. SA Bennett's efforts to discover the whereabouts of the missing property were unavailing and he departed. Later that day, however, his office received a phone call from the unit indicating that the lost property had been found.

During the interim between SA Bennett's visit and the phone call, the Acting Supply Sergeant, a Specialist Five (SP5) Columbo, met with the appellant in the latter's room. This confrontation was occasioned by the fact that the appellant was a supply clerk who was then working, and had worked for an extended prior period, in this supply room under Columbo's supervision, and, since there was no evidence of a forced entry into the supply room premises, Columbo suspected appellant of involvement in purloining the missing property. Immediately upon questioning by Columbo, appellant admitted that he and another soldier had taken and pawned the items. Appellant volunteered to recover the property, but informed Columbo that he did not have the necessary funds. Shortly after this meeting, SP5 Columbo discussed the matter with a Sergeant Wilson, revealing what he had learned from the appellant, and requested his opinion as to whether he ought to help appellant recover the property. Despite Wilson's contrary advice, Columbo loaned the appellant the funds necessary to redeem the pawned items and also transported him and his cohort in his private vehicle to and from the pawnshop. During the course of their travels, Columbo stated to the culprits that all he was interested in was the return of the property and that if that was accomplished he would not expose them. On returning to the Company, the property was placed in an obscure location in the supply room, Sergeant Anglin was notified of its presence, and the CID was informed that the lost had been found. Apparently as a result of Wilson's comments to other members of the unit, the facts concerning the recovery of this property

reached Sergeant Anglin's ears. On 21 July 1977, Sergeant Anglin phoned SA Bennett and revealed to him what he had learned. At Anglin's behest, Sergeant Wilson took the phone and confirmed the rumor. Based on this report, SA Bennett expedited a search of the local pawnshops in an effort to locate tickets with appellant's name thereon. His efforts met with success.

On 25 July 1977, Bennett interviewed SP5 Columbo in the CID office and obtained a statement from him which included the fact that appellant had confessed to this crime to Columbo on 18 July 1977. On his return to the unit after this interview, Columbo informed the appellant that he had told the CID "everything." SA Bennett also interviewed the co-conspirator on this same date.

On 26 July 1977, SA Bennett interrogated the appellant. He preceded his questioning with the requisite Article 31/*Tempia*[1] warnings, but did not advise appellant in reference to his prior incriminating statement to Columbo. Appellant assented to questioning and, after SA Bennett informed him of what he had learned concerning the incident, appellant provided a complete confession. During the course of this interview the recovered pawn tickets were conspicuously in sight.

As indicated earlier, it is the confession made to SA Bennett that is presently under attack. It was the sole confession admitted on the merits at trial, and appellant's present conviction is posited thereon. Unquestionably, appellant was properly advised by SA Bennett of his right to remain silent and consult with counsel prior to making the disputed confession. Nevertheless, because of the presence of a prior inculpatory statement made under questionable circumstances, the problem of voluntariness remains unresolved.[2]

No serious dispute arose at trial, nor has one been made in the pleadings on appeal, concerning the obligation on SP5 Columbo

---

1. Article 31, UCMJ (10 U.S.C. § 831); *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

2. *United States v. Seay*, 1 M.J. 201 (C.M.A. 1975); *United States v. Hundley*, 21 U.S.C.M.A. 320, 45 C.M.R. 94 (1972).

to have advised appellant in accordance with Article 31, UCMJ, prior to his inquiry of him on 18 July 1977.

 Our reading of *United States v. Dohle*, 1 M.J. 223 (C.M.A.1975), leads us to conclude that this resignation by counsel is appropriate. The holding in that case, at page 226,

> that where a person subject to the Code interrogates–questions–or requests a statement from an accused or suspect over whom the questioner has some position of authority of which the accused or suspect is aware, the accused or suspect must be advised in accordance with Article 31.

appears to be eminently applicable to the facts surrounding the first confession. SP5 Columbo was not only appellant's superior as regards rank, but he was his military supervisor, both in the supply room and as his squad leader. Columbo's visit to appellant's room was precipitated by a definite suspicion on Columbo's part that appellant was responsible for the disappearance of the missing items. The record is clear that he interrogated appellant for the express purpose of effecting a recovery of the absent property.[3] We hold that the statements obtained by SP5 Columbo were procured in violation of Article 31, UCMJ.

Turning now to the core question of whether *vel non*, now that we have determined that the cat was illegally released, there is evidence that it was rebagged[4] prior to appellant's statement to SA Bennett.

Some of the criteria for arriving at a determination in this particular are enumerated in *United States v. Seay*, 1 M.J. at 204. They are:

1. The time lapse between the questioning periods;

2. Whether the accused was again questioned by the individual who obtained the prior inadmissible statement;

3. Whether the accused himself made an acknowledgement that his prior admissions did not influence his decision to incriminate himself again; and

4. Whether the interrogator relied upon the prior admissions in seeking a subsequent statement.

Further, the Court reiterates in that opinion the oft-repeated injunction that "only convincing evidence"[5] will sustain the Government's "heavier burden"[6] under these circumstances to establish the voluntariness of the accused's second statement.

> In application, only the strongest combination of these factors would be sufficient to overcome the presumptive taint which attaches once the Government improperly has secured incriminating statements or other evidence. *Id.*

 Our appraisal of the record leads us to the conclusion that the Government efforts did not succeed in meeting this exacting standard. Examining the factors listed *supra* in light of the facts in this case we find:

1. Although there was a lapse of nine days between the procurement of the illegal confession and the taking of the subsequent incriminating statement, we know the appellant's awareness of the criticality of his earlier confession had not been dissipated. The record reveals that SP5 Columbo told the appellant just one day before his interview with SA Bennett that he, Columbo, had told Bennett what had occurred on 18 July. In all probability this revelation had a startling impact on the appellant because, up to that point in time, Columbo had indicated to the appellant that he would not inform the authorities about the incident. Therefore, we find that the Government

---

3. In all probability Columbo's interrogation would also have been defective under the "official capacity" test noted in *United States v. Beck*, 15 U.S.C.M.A. 333, 35 C.M.R. 305 (1965).

4. *United States v. Caliendo*, 13 U.S.C.M.A. 405, 32 C.M.R. 405 (1963); *United States v. Spero*, 8

U.S.C.M.A. 110, 23 C.M.R. 334 (1957) (Ferguson, J. concurring).

5. *United States v. Hundley*, 21 U.S.C.M.A. at 325, 45 C.M.R. at 99 (1972).

6. *United States v. Foecking*, 22 U.S.C.M.A 46, 48, 46 C.M.R. 46, 48 (1972).

cannot, under the facts of this case, invoke the time interim between the first and second inculpatory statements to insulate the latter from the effect of the former;

2. The appellant was not questioned in both instances by the same interrogator. Nevertheless, whatever else this fact may evidence it does not, as we have already noted, indicate that the second interlocutor was unaware of the earlier, illegal confession;[7]

3. The appellant has never acknowledged, by word or deed, that his first admission did not influence his subsequent decision to incriminate himself; and,

4. While the evidence is not specific on the issue as to whether or not SA Bennett referred to appellant's earlier confession when he interviewed him, the record unequivocally reveals that SA Bennett informed the appellant of what he had learned from his prior interrogation of SP5 Columbo about appellant's complicity in this crime. Obviously, this evidence runs counter to establishing that SA Bennett placed no reliance on appellant's first statement in his efforts to procure the subsequent one.

We are not here trying to determine whether or not SA Bennett had a sufficient basis or evidence *aliunde* the first confession to warrant interrogating the appellant on 26 July 1977. Rather, we are analyzing the evidence of record to ascertain whether the Government has met its burden to establish that the accused's second confession was not impelled by his earlier illegally obtained revelations. The objective evidence of appellant's subjective thoughts on the occasion of his second confession lead us to conclude that the fact and influence of his earlier confession had not been expunged. Ergo, the taint of the illegal confession had not been attenuated at the time of the taking of the confession admitted at

trial. Consequently, that confession, too, was inadmissible.

Under these circumstances, reversal is required.[8]

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge CARNE and Judge THORNOCK concur.

---

7. This is not to say that SA Bennett knew the earlier statement was taken in violation of Article 31, UCMJ, and/or that he should have advised the appellant that his earlier confession could not be used against him. We attribute no culpability to SA Bennett's actions in this particular. It should also be noted, however, that whether or not SA Bennett was aware of the earlier confession is not dispositive of the question concerning its influence on the later confession. *United States v. Ricks*, 2 M.J. 99, 106 n. 6 (C.M.A.1977).

8. *United States v. Dohle*, 1 M.J. 223 (C.M.A. 1975).